IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ) | | |
| ) | Chapter 11 | |
| EQUIPMENT ACQUISITION ) | | |
| RESOURCES, INC., ) | | |
| ) | Case No. 09-bk-39937 | |
| Debtor. ) | | |
| ) | | |
| ) | | |
| WILLIAM A. BRANDT, JR., solely in his ) | Hon. Timothy A. Barnes | |
| capacity as Plan Administrator for ) | | |
| Equipment Acquisition Resources, Inc., ) | | |
| ) | | |
| Plaintiff, ) | Adv. No. 11-ap-02198 | |
| v. ) | | |
| ) | | |
| ALLIANCE COMMERCIAL CAPITAL, ) | | |
| INC., ) | | |
| ) | | |
| Defendant. ) | | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the Bankruptcy Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred of all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). A proceeding to avoid and recover fraudulent conveyances arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H).

Accordingly, final judgment is within the scope of the court's authority.

1

## PROCEDURAL HISTORY

This matter comes before the court on the motion (the "Motion To Dismiss") of defendant, Alliance Commercial Capital, Inc. ("ACC" or "Defendant") to dismiss the adversary proceeding filed by Plaintiff, William Brandt, Jr., in his capacity as Plan Administrator for Equipment Acquisition Resources, Inc. ("EAR", "Debtor" or "Plaintiff"). The Second Amended Complaint, as described below, seeks the recovery of approximately $1 million in lease payments alleged to have been fraudulently transferred from EAR to ACC as part of a fraudulent lease scheme orchestrated by one Sheldon Player ("Player"). Defendant seeks dismissal of the adversary proceeding because the Second Amended Complaint was filed after the statute of limitations and the amendments do not satisfy Federal Rule of Civil Procedure ("Rule") 15 in order to "relate back" to the original complaint.[1]

## BACKGROUND

Unless otherwise indicated, the following facts are taken from Plaintiff's Second Amended Complaint and are assumed to be true for purposes of the motion to dismiss, all reasonable inferences being drawn in Plaintiff's favor. *See, e.g., Cole v. Milwaukee Area Technical College District*, 634 F.3d 901, 903 (7th Cir. 2011).

EAR was incorporated in 1997. It was designed to operate as a refurbisher of special machinery, a manufacturer of high-end technology parts, and a process developer for the manufacture of high-technology parts. The bulk of EAR's stated revenue derived from refurbishing and selling high-tech machinery; it was set up to purchase high-tech equipment near the end of its useful life at prices that were low relative to the cost of new units, and then refurbish using a propriety process the equipment for sale to end-users at substantial gross margins.

Eventually, EAR's apparent success came to an end, because of Player's abuse of EAR. Player systematically and repeatedly caused EAR to enter into unnecessary and harmful agreements related to over-valued machinery. As part of his scheme, Player caused EAR to enter into financing and financing-type lease agreements with certain entities (the "Financial Entities") related to equipment that was allegedly owned by Machine Tools Direct, Inc. ("MTD"). However, MTD was a mere strawman in Player's scheme. Many, if not all, of the sale invoices from MTD to the Financial Entities grossly overstated the value of the underlying equipment. MTD "purchased" the equipment from EAR mere days before MTD sold the equipment to either EAR or the Financing Entity. In those instances, Player purportedly caused EAR to transfer title to the equipment to MTD, and MTD then sold that equipment to EAR (or the Financial Entity in the case of a lease) at an inflated purchase price. As a result of this scheme, Player caused EAR to lease equipment at a cost far in excess of its actual value.

---

[1] The court is aware that in a filing summarizing the arguments of the Defendant and other, similarly situated defendants, this Defendant was noted as raising issues regarding whether the Plaintiff's claim should be dismissed under Fed. R. Civ. Pro. 12(b)(6) and 9(b). However, these issues were never raised in the Defendant's Motion To Dismiss, nor did this Defendant argue these issues at the July 10, 2012 hearing. As such, despite the contents of the summary, Defendant has not put these issues before the court. As a result, the court herein addresses the only issue actually raised by the Defendant in the Motion To Dismiss – failure to satisfy Federal Rule of Civil Procedure 15(c).

EAR did not benefit from these circular transfers, as EAR paid far more for the equipment under the financing or lease agreements than it ever received via the sale to MTD. Moreover, Player's defalcations further prevented EAR from having the funds necessary to repay the related financing or lease obligations, thus requiring EAR to enter into an increasing number of these transactions in order to have sufficient funds to repay its current obligations.

Plaintiff contends that "[i]n effect, Player's misconduct amounted to a Ponzi-scheme where funds from later Financing Entities were used to repay EAR's obligations under earlier financing and lease obligations." Second Amended Complaint, at ¶ 15.

In 2009, after receiving numerous notices of default from its creditors, EAR sought the assistance of outside counsel and turn-around specialists in order to assist in the company's rehabilitation. After some investigation, EAR's outside counsel and consultants discovered what they believed to be evidence of potential fraud in EAR's leasing activity.

Upon this discovery, EAR's officers and directors resigned on October 8, 2009. With the resignation of the former officers and directors, Player too lost any power to influence or control EAR's operations. Plaintiff was then elected as sole member of the board of directors and as the Chief Restructuring Officer, vested with power to assume full control of EAR's operations and all the powers and duties of the President, Chief Executive, and Treasurer of EAR. Pursuant to these powers, Plaintiff filed, on October 23, 2009 (the "Petition Date"), EAR's voluntary chapter 11 petition.

On July 15, 2010, the court confirmed EAR's Second Amended Plan of Liquidation (the "Plan"), and William Brandt, Jr. was appointed as the Plan Administrator (the "Plan Administrator"), with the authority to pursue "Litigation Claims," as defined in the Plan. Plaintiff seeks to bring the claims alleged in the Complaint pursuant to that authority.

## PLAINTIFF'S TRANSACTIONS WITH DEFENDANT

According to Plaintiff, beginning in 2007, ACC entered into numerous leases with EAR related to certain equipment (the "Leases"). Under the terms of the Leases, EAR was required to make monthly payments to ACC with respect to the equipment identified in the Leases. Although ACC transferred its interests in the Leases to other entities, it received payments from EAR in association with the Leases.

Plaintiff alleges that the transactions between EAR and ACC were the type of financing arrangements that Player used to perpetuate his scheme. As a result of the scheme, EAR creditors that had financing agreements and leases which were part of Player's scheme have been unable to identify what, if any, equipment that at EAR's facilities was subject to a valid security agreement or lease. Plaintiff contends that because the transfers that EAR made to ACC made to ACC in satisfaction of the obligations under the Leases were made to ACC were part of Player's fraudulent scheme, the transfers were made with the actual intent to hinder, delay, and defraud EAR's remaining creditors.

Within two years preceding the filing of the Chapter 11 petition, and specifically from July 2008 through June 2009, EAR made transfers to ACC, in accordance with the requirements of the

3

Leases, totaling $ 840,167.70. Plaintiff seeks the avoidance of those transfers under 11 U.S.C. § 548(a)(1)(A) and the recovery of same for the benefit of the estate under 11 U.S.C. § 550.

Additionally, within four years preceding the bankruptcy filing, and specifically on or about October 2, 2007, EAR transferred $ 189,345.28 to ACC in accordance with the requirements of one of the Leases. Plaintiff seeks the avoidance of that transfer under 11 U.S.C. § 544(b)(1) and 740 ILCS 160/5(a)(1) and the recovery of same for the benefit of the estate under 11 U.S.C. § 550.

The Debtor filed the original complaint (the "Original Complaint") on October 21, 2011, two days prior to the two-year statute of limitations to bring avoidance actions. The Original Complaint named Alliance Commercial Capital Corporation as the defendant in the action (see chart below). On December 28, 2011, the Debtor filed the First Amended Complaint to substitute William A. Brandt, Jr. for the Debtor as Plaintiff. The First Amended Complaint also named Alliance Commercial Capital Corporation as the defendant in the action but was served to a new person, Sam Fallenbaum, at a new address, 161 North Clark.

On January 23, 2012, the Debtor received a letter from the attorney for ACC Alliance Commercial Capital, Inc. stating that ACC Alliance Commercial Capital, Inc. was not the party listed in the First Amended Complaint. On the same day, the Debtor contacted ACC Alliance Commercial Capital, Inc. to verify that it had no relationship with the Debtor. ACC Alliance Commercial Capital, Inc. responded that it had done business with the Debtor.

In response, the Debtor filed a motion seeking leave to amend the First Amended Complaint to change the name of the Defendant from American Commercial Capital "Corp." to American Commercial Capital "Inc." The court granted leave to amend and on February 1, 2012, the Debtor filed the Second Amended Complaint. The Second Amended Complaint named Alliance Commercial Capital, Inc. as the defendant and served Sam Fallenbaum again, and Kevin Krantz, counsel for ACC Alliance Commercial Capital, Inc.

The following table summarizes these facts:

| Filing | Named Defendant | Named Agent and Address for Defendant in Complaint | Actual Service Made Upon |
|---|---|---|---|
| Original Complaint | Alliance Commercial Capital Corporation | Brett A. Banner 5728 Tiburon Court Hanover Park, Illinois, 60103 | Alliance Commercial Capital Corp. Attn: Brett A. Banner 5728 Tiburon Court Hanover Park, Illinois, 60103 |
| First Amended Complaint | Alliance Commercial Capital Corporation | Brett A. Banner 5728 Tiburon Court Hanover Park, Illinois, 60103 | Alliance Commercial Capital Corp. Attn: Sam Fallenbaum 161 North Clark, Suite 4700 Chicago, IL 60601 |

| | | | |
|---|---|---|---|
| Second Amended Complaint | Alliance Commercial Capital, Inc. | Kevin Krantz<br>55 W. Monroe Street, Suite 1200<br>Chicago, IL 60603<br>--OR--<br>Sam Fallenbaum<br>865 N. LaSalle<br>Chicago, IL 60610 | Alliance Commercial Capital, Inc.<br>c/o Kevin Krantz<br>55 W. Monroe Street, Suite 1200<br>Chicago, IL 60603<br>--AND--<br>Alliance Commercial Capital, Inc.<br>Attn: Sam Fallenbaum, President<br>865 N. LaSalle<br>Chicago, IL 60610 |

On March 20, 2012, ACC Alliance Commercial Capital, Inc. filed its Motion To Dismiss the adversary proceeding.

## DISCUSSION

Section 546 of the Bankruptcy Code prescribes the statute of limitations for avoidance actions. Actions must be brought within two years of the filing of a bankruptcy petition. 11 U.S.C. § 546. Therefore, in this matter the complaint to avoid the transfers must have been filed by October 23, 2011. The Original Complaint was filed October 21, 2011, thereby satisfying the statute of limitations. The Second Amended complaint was filed on February 1, 2012. In order to satisfy the statute of limitations, the Second Amended Complaint must "relate back" to the Original Complaint in order to also satisfy the statute of limitations under 11 U.S.C. § 546.

Subsection (c) of Federal Rule of Civil Procedure 15 allows an amended complaint naming a new defendant to "relate back" to the date of an original complaint for purposes of satisfying the statute of limitations if three elements are met. Fed. R. Civ. Pro. 15(c). The three elements are: (i) that the claims in the amended complaint arise out of the same conduct, transactions, or action as the original pleading, (ii) within the limitations period, the new defendants received notice of the action that they will not be prejudiced in maintaining their defenses on the merits; and (iii) within the limitations period, the new defendants knew or should have known that, but for the mistake concerning the identity of the proper parties, the action would have been brought against them. *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). Construing all evidence presented in the Second Amended Complaint to be true, the Second Amended Complaint and notice thereof satisfies Rule 15(c) for purposes of "relating back" to date of the Original Complaint.

1. <u>Same Conduct, Transactions, or Action as the Original Pleading</u>

The only changes between the Original Complaint, the First Amended Complaint, and the Second Amended Complaint were the named defendants and the description of the defendants. Therefore, the first element is satisfied and does not warrant in-depth analysis.

2. <u>Actual Notice Within the Limitations Period</u>

The Defendant must have received actual notice of the adversary proceeding by October 23, 2012. The Original Complaint was served on Brett A. Banner, listed service agent for Alliance Commercial Corporation. The relationship between Mr. Banner and Alliance Commercial Corporation, and the Defendant in this action is unknown. As the Defendants have been less than forthcoming in disclosing their relationship with the Debtor, the court cannot determine whether there was a relationship between the party that received notice of the Original Complaint and the Defendant, and whether the Defendant received actual notice of the action. The Defendant does not address the relationship.

Construing the Second Amended Complaint and all inferences from it in the light most favorable to the Plaintiff, the court cannot say that the Plaintiff would not be able to prove under any set of facts that the Defendant did not receive notice of the adversary proceeding by October 23, 2012. Therefore, the second element is satisfied.

3. <u>Within the Limitations Period, the New Defendant Knew or Should Have Known, but for the Plaintiff's Mistake, the Action Would Have Been Brought Against It</u>

The Supreme Court recently certified and decided a case to resolve a circuit split as to the focus of knowledge under the third element. In *Krupski v. Costa Crociere S.P.A.*, a plaintiff sought to amend a complaint to bring in a new defendant after the statute of limitations had run. ___ U.S. ___, 130 S.Ct. 2485, 2492 (2010). The plaintiff amended the complaint because she sought to remedy a mistake as to the roles of the parties in the action. The Supreme Court weighed the policies of liberal pleading and deciding cases on the merits against the policies behind the statute of limitations, mainly the defendant's right to repose. *Id.* at 2494. "A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id.* The Supreme Court held that the focus of the inquiry required under FRCP 15(c)(1)(C) is what the new party knew or should have known from the original pleading, not what the amending party knew. The Supreme Court allowed related back because the new defendant knew of the action within the limitations period, was related to the corporate entity named in the original complaint, and should have known that they were the correct defendant. *Id.* at 2498.

Prior to *Krupski*, the Seventh Circuit focused on what the amending party knew. *E.g., Hall v. Norfolk Southern Railway Co.*, 469 F.3d 590 (7th Cir. 2006). In addition, the Seventh Circuit has since recognized that the Supreme Court's opinion in *Krupski* modified its prior interpretation of Rule 15(c). *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559 (7th Cir. 2011).

Nonetheless, the Defendant relies on the Seventh Circuit's prior interpretation of Rule 15(c) by arguing that the focus of the court's inquiry should be on what the Plaintiff knew and when the Plaintiff discovered the "mistake" corrected in the Second Amended Complaint. This argument is wrong and ignores recent Supreme Court and Seventh Circuit law.

On the other hand, the Plaintiff correctly relies on *Krupski* and *Joseph* to argue that the court should focus on whether the Defendant knew of the adversary proceeding prior to October 23, 2012. Based on the unknown relationship between the party that received notice of the Original Complaint and the Defendant, the Defendant may have known of the adversary proceeding, and should have known it should have been the named defendant based on its relationship with the Debtor. Nonetheless, the Defendant failed to identify itself until after the expiration of the statute of limitations. It was not until the Plaintiff pressed the Defendant about whether the Defendant had a relationship with the Debtor that the Defendant acknowledged it had received transfers from the Debtor.

Again, construing the Second Amended Complaint and all inferences from it in the light most favorable to the Plaintiff, the court cannot say that the Plaintiff would not be able to prove under any set of facts that the Defendant did not know of the adversary proceeding by October 23, 2012. Therefore, the third element is satisfied.

## CONCLUSION

For all of the foregoing reasons, the Defendant's Motion To Dismiss is not well taken, and should be denied.

A separate order will be issued, concurrent with this Memorandum Decision, denying the Motion To Dismiss.

Dated:   September 28, 2012                ENTER:

Timothy A. Barnes
United States Bankruptcy Judge